**Frank Dean TEAGUE, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 73–1506.**

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1974.

Decided July 17, 1974.

Kenneth F. Levin, Chicago, Ill., Frank Dean Teague, pro se, for petitioner-appellant.

James R. Thompson, U. S. Atty., Frederick H. Branding, Asst. U. S. Atty., Chicago, Ill., for respondent-appellee.

Before CUMMINGS, PELL and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal is from the denial of petitioner's motion under 28 U.S.C. § 2255 claiming that his conviction for armed robbery of the Citizens Savings and Loan Association ("Citizens") in Chicago was based upon false testimony of Joseph Archie resulting from a deal between him and the prosecutor.

After having been sentenced to 25 years for armed robbery, petitioner appealed to this Court. We affirmed the conviction. United States v. Teague, 445 F.2d 114 (7th Cir. 1971). Our opinion noted that four employees of Citizens had identified petitioner as the person who held them at gunpoint while ordering the president of the association to hand over currency from the tellers' desk drawers. As we noted, those witnesses first gave the Federal Bureau of Investigation descriptions of the robber's weight and age which differ from those of the petitioner. However, in trial testimony, each witness was positive that petitioner was the robber.

As to Joseph Archie, our opinion stated:

> "The defendant was also identified by Joseph Archie, who was in the process of opening up a checking account under a false name when the robber entered the building. He testified that he had observed Teague point a shotgun at a teller. Archie stated that he was directed by Teague to place the money in a briefcase. After the money was collected, Teague ordered all persons in the area into a back room." (445 F.2d at 117)

This is the entire discussion of Archie's testimony in our prior opinion which emphasized the testimony of the four employees of the association. Thus we stated:

> "The positive and undisputed identification of the defendant by the employees of Citizens, who were eyewitnesses to the robbery, constitutes sufficient evidence to sustain the jury's verdict of guilty beyond a reasonable doubt. * * * his guilt was more than adequately proved by the employees who observed the defendant committing the robbery." (445 F.2d at 118)

In his Section 2255 motion, petitioner claimed under oath that in the course of his trial the Government failed to inform the jury that a deal or promise for leniency had been made to Joseph Archie, described "as a key witness." Petitioner asserted that the prosecutor knowingly permitted Archie to perjure himself and knowingly suppressed evidence regarding Archie's character, criminal convictions and charges against him.

According to petitioner's affidavit attached to his motion, Archie perjured himself when he testified at petitioner's trial that he was not then under federal arrest nor accused of any federal offense, that the prosecutor had not offered him leniency for his testimony, and that he had been convicted of only two felonies (burglary in 1961 and strongarm robbery in 1963). Actually, according to this affidavit, Archie had been a federal prisoner under charges involving 18 U.S.C. §§ 1708 and 2114 since the day before his appearance as a government witness at petitioner's trial. Archie allegedly was granted leniency upon conviction for said federal offenses and was also granted leniency in an unrelated state felony case through the intervention of the federal prosecutor and his superior. In addition to the two felonies about which he testified, Archie was allegedly also convicted of a 1958 armed robbery, a February 1961 burglary and three armed robberies in March 1964.

In support of these sworn allegations, petitioner attached several exhibits to his motion. One such exhibit was a transcript of parts of Archie's testimony, showing that he gave the answers alleged. Another exhibit was the record of proceedings before the United States Commissioner, showing that on June 17, the same day he testified against petitioner, a criminal complaint was filed charging Archie with assaulting a postal employee in violation of 18 U.S.C. § 2114. The exhibit also showed that Archie appeared before the Commissioner the same day and waived hearing after being advised of the complaint and of his rights. The complaint was superseded by an indictment one month later, which added a count of possessing a check stolen from the mails in violation of 18 U.S.C. § 1708. A final judgment order was also attached to the motion, showing that Archie pled guilty to the postal offenses and was sentenced on Count I to two years under 18 U.S.C. § 4208(a)(2) with recommendation that he be sent to a medical center rather than a prison, and that he be given "early parole by use of the Halfway House in Chicago." Sentence on Count II was suspended and five years' probation was imposed. The possible maximum was five years on Count I and ten years on Count II.

Another exhibit was a transcript of a hearing in Archie's prosecution for forgery on November 7, 1969, in the Circuit Court of Cook County. In argument on a motion to dismiss for excessive pre-trial delay, Archie's counsel and the Assistant State's Attorney both represented that Archie had been arrested by state officers and delivered into federal custody on June 16, 1969, the day before he testified against petitioner. After the motion to dismiss was denied and a finding of guilty entered, the Assistant State's Attorney informed the court of Archie's criminal record, mentioning at least five felonies which predated petitioner's trial.

The Assistant State's Attorney observed in mitigation that he had been in contact with petitioner's federal prosecutor. The federal prosecutor had advised the Assistant State's Attorney that "Mr. Joseph Archie was the key witness in a bank robbery case [against petitioner] * * * and his testifying is the sole reason of getting a conviction in the case * * *."

The Assistant State's Attorney also advised the state sentencing judge that the United States Attorney had written him a letter relating "that Mr. Archie was a key witness for them." The United States Attorney's letter concluded by asking the state court to consider Archie's cooperation in the prosecution

of Teague and the fact that Archie had been "given five years probationary period" on his guilty plea to the postal offenses. Thereafter the state court judge sentenced Archie to a year and a day to run concurrently with the federal sentence.

The Government's response to the motion to vacate the sentence asserted that "the mere circumstance of Joseph Archie's arrest on the federal complaint following his testimony in petitioner's trial raises no inference that a 'deal' had been made with the government." The response also asserted that petitioner did not present proof of his claim of knowing use of perjured testimony against him. The response was supported by an affidavit of the prosecutor stating that on June 16, 1969, when petitioner's trial commenced, "the whereabouts of Joseph L. Archie, a *principal* witness in that cause, was unknown to the United States Attorney's office" (emphasis supplied). The affiant also stated that on the evening of June 16 a postal inspector advised the prosecutor that Archie had been placed under arrest by the Harwood Heights, Illinois, police. The prosecutor interviewed Archie that evening. He agreed to appear as a witness the next morning at petitioner's trial. The prosecutor's affidavit concluded as follows:

> "That affiant made no promises of immunity or leniency in exchange for Archie's testimony. Affiant further states that he has no recollection of having discussed with Archie the possibility of the placement of federal charges against Archie prior to the time that Archie testified as a government witness."

The Government's response also appended an unsworn letter from Joseph Archie, then in federal prison at Sandstone, Minnesota, stating that he was arrested by suburban police on June 16, 1969, and interviewed by the federal prosecutor of petitioner that evening, but that he had no recollection of the content of their conversation.

Following the receipt of these documents and a reply from petitioner, the district court rendered a short memorandum opinion denying petitioner's motion to vacate his sentence. After stating that it was "dubious" of petitioner's assertions, the court added that the mere fact that an agreement to testify may have been reached does not raise an inference that the testimony was perjured. The opinion noted that petitioner's exhibits "are related to factual matters tending to impeach Archie's testimony rather than to the substance of his testimony as to Teague's guilt."

The district judge concluded that petitioner's motion must be dismissed because in our opinion affirming his conviction we relied so heavily on the four association employees' testimony against petitioner even though, as the district judge stated, "the testimony of Archie was helpful to the government in proving its case against Teague." The court held that petitioner's assertions regarding the knowing use of perjured testimony on the part of the Government showed only harmless error.

■ Although petitioner appeared *pro se* in the district court, we doubt that an attorney could have stated his contentions much more precisely. He set forth specific questions and the answers which he believed to be perjured; he set forth what he believed to be the true answers to those questions, and he attached court records which documented the untruth of several of the contested answers and raised a strong inference as to the untruth of the others. On the surface, the June 16th–17th timing at least implies a promise to Archie and a plea bargain before his testimony at petitioner's trial. It may turn out that the Government can rebut that inference, that the attached court records are wrong, or that some of the answers were mistaken but not perjured. But petitioner need not disprove all such possibilities to be entitled to a hearing; rather, he is entitled to a hearing so that both sides can offer proof.

At the time the district court denied the motion without a hearing, the Supreme Court had not decided DeMarco v. United States, 415 U.S. 449, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974). That case reemphasized the rule of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104, that a conviction is invalid if the Government permits one of its witnesses falsely to deny a promise of leniency made in exchange for his testimony. The Court said in *DeMarco:*

> "there was a plea bargain between the witness and the Government at some point, the question being whether it was made after or before petitioner's trial. This factual issue was dispositive of the case, and it * * * should have been [decided] in the District Court after an evidentiary hearing."

Here no hearing was held to resolve the conflict in the affidavits presented by petitioner and the Government. It is clear that *DeMarco* requires such a hearing. If the district judge finds after a hearing that any government official made any promises to or deals with Archie before his 10:30 a. m. testimony on June 17, then *Giglio* and *DeMarco* require that petitioner be discharged or given a new trial.

Whether there was an explicit bargain before Archie testified is not the only issue, however. Archie also testified that no federal charges were pending against him, that he did not expect any federal charges, and that no one had ever suggested that he had broken any federal laws. He gave a somewhat non-responsive but essentially negative answer to the question whether he believed the federal authorities would treat him kindly if he cooperated with them. He stated that he only had two previous felony convictions. If the evidence shows that some or all of these answers were false, and that the Government had reason to know the answers were false, then the district judge must decide whether "the false testimony could * * * in any reasonable likelihood have affected the judgment of the jury * * *." *Giglio,* 405 U.S. at 154, 92 S.Ct. at 766; Napue v. Illinois, 360 U.S. 264, 271, 79 S.Ct. 1173, 3 L.Ed.2d 1217. *Napue, Giglio* and *DeMarco* all make clear that false answers to questions intended only to impeach the witness can be material under this test.

Finally, we note that the Government recommended leniency for Archie in his Illinois forgery trial because he was the "key witness" in petitioner's trial, with his testimony as "the sole reason of getting a conviction." This highlights the unimportance to the materiality issue of the fact that we noted on the prior appeal that the testimony of four employees of Citizens may have been sufficient for conviction. Archie's testimony might still have tipped the jury's verdict in favor of the Government; we do not know on which witness or witnesses the jury relied.

Accordingly, the order denying petitioner's motion is vacated, and the case is remanded.