Michael E. SCHNEIDER,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 76–2917.

United States Court of Appeals,
Fifth Circuit.

May 18, 1977.

George A. Scharmen, II, Staff Counsel for Inmates, Huntsville, Tex., for petitioner-appellant.

John H. Hill, Atty. Gen., Max P. Flusche, Jr., Gilbert J. Pena, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before MORGAN and RONEY, Circuit Judges, and KING,* District Judge.

RONEY, Circuit Judge:

■ This case involves a question of law which turns on the facts of the individual case. The facts of this case are a bit different. The defendant in a state trial admitted that he was guilty of a crime, robbery, but denied he was guilty of robbery by firearm, for which he was convicted. The conviction was affirmed on appeal. *Schneider v. State,* No. 48,938 (Tex.Ct.Crim. App. Oct. 16, 1974). He now claims to possess newly discovered evidence that the state officer, who provided the only testimony that a firearm was used, deliberately committed perjury about this fact. A state district court, the Texas Court of Criminal

* District Judge of the Southern District of Florida, sitting by designation.

Appeals, and the federal district court all denied habeas corpus relief without a hearing. Because the facts petitioner asserts, if true, could establish a denial of constitutional due process sufficient to justify issuance of a writ of habeas corpus, we remand this case to the district court for an evidentiary hearing.

An evaluation of Michael Schneider's claim requires a precise understanding of the state's case against him and his response to it. The state's chief witness was Ron Nicholson, a University of Texas campus police officer who worked in the narcotics division. He testified that one of his informers notified him that a person at the Northwest Cue Club was interested in selling narcotics. Nicholson went to the pool hall and was introduced to petitioner Schneider. Shortly after his arrival, Nicholson and Schneider left the pool hall in Nicholson's car. Schneider directed Nicholson to an apartment complex located on the outskirts of Austin. It was at this point where the stories clash.

The version of events Nicholson offered at trial is as follows: Nicholson said he refused to advance $70 to Schneider as front money for amphetamines. Schneider then left Nicholson, heading somewhere into the apartment complex. After approximately 5 minutes, Schneider returned to the vehicle and asked Nicholson if he had the money. After hesitating briefly, Schneider pulled a gun out of his coat pocket and demanded that Nicholson give him all of his money. Nicholson gave him the $70 intended for the drug purchase and also surrendered his wallet containing $23. Schneider then walked back into the apartment complex and never came back.

The only other witness called by the state was an associate of Nicholson on the University of Texas police force. This witness corroborated Nicholson's testimony to some extent. He stated that after following Nicholson to the apartment complex, he saw the passenger in Nicholson's car exit, head into the complex, and then return to the car only to head back into the complex shortly thereafter.

In response to this testimony, Schneider took the stand in his own defense. His testimony coincided with Nicholson's up to the point where the two reached the apartment complex. Schneider testified that Nicholson originally refused to front the money for the drugs, but when they arrived at the complex, changed his mind and gave Schneider the money. Schneider testified that he told Nicholson he would have to go to his source's apartment alone since his source would be outraged if he brought a stranger. According to Schneider, he took the money fully intending to steal it, and did so, by walking up the stairs to the complex and then absconding by climbing down the gutters of the apartment complex. He testified that he did not own or possess a gun on the day in question, and that he positively did not rob Nicholson at gunpoint.

The difference between the crime of which Schneider was accused and the one he admitted is this: robbery by firearm was a capital offense, while theft of $93 carried a maximum sentence of 10 years. Texas Stat.Ann. tit. 17 arts. 1408, 1421, (repealed), *reprinted in* Tex. Penal Code Ann. app. 687, 690 (Vernon).

Nearly two and a half months after Schneider's conviction was affirmed on appeal, William Hardin, an employee of the Northwest Cue Club, and the person who first called Nicholson to inform him that a person at the club was interested in selling narcotics, signed an affidavit which recites in part as follows:

" . . . I knew that Ron Nicholson was a narcotics agent and he had previously arranged for me to notify him if I heard of anyone wanting to sell drugs. About 20 or 30 minutes after I telephoned Ron Nicholson, he arrived at the club. This Chicano man introduced Ron Nicholson to Michael Schneider while inside the club. After a short time, Schneider and Nicholson left together. About 20 or 30 minutes after they left, I got a phone call from Nicholson. I recognized his voice, as I have talked with him

numerous times before this, both in person and on the phone. He told me that Schneider had taken his money, about $95.00, and gone into an apartment and saying he would return with the "speed" but he never did. Schneider had taken the $95.00 and simply left. Nicholson wanted me to see if the girl who was with Schneider in the club was still there and to keep an eye on her, and to see if Schneider returned to the club. The girl had already left. When Ron Nicholson returned to the club he again told me how he had given $95.00 to Michael Schneider to purchase the "speed" and L.S.D. Nicholson told me that he waited in his car while Schneider went inside the apartment to get the "speed" and L.S.D. Schneider never returned. Nicholson told me that he did not want to tell his boss, Herb Cavender, of the University of Texas at Austin, Police, that he had gotten "burned" so he was going to say that Schneider pulled a gun and robbed him. I am relating these events as they happened as I have personal knowledge of the events of the evening of March 21, 1973, on which date the above related events took place. I have worked with agent Nicholson several times in the past previous to this particular incident helping him work cases."

The thrust of this affidavit is that Nicholson, prior to trial, told a state informer that, although it was not true, he was going to say that Schneider pulled a gun and robbed him in order to cover up the fact that he had been "burned."

The state offers three arguments as to why Hardin's affidavit, even if true, would not establish a denial of due process. First, Hardin's proffered testimony would merely impeach the statements Nicholson made at trial, and newly discovered impeachment evidence is not sufficient to support a writ of habeas corpus. *See Garrison v. Maggio,* 540 F.2d 1271 (5th Cir. 1976). The affidavit, however, involves far more than simple impeachment by a prior inconsistent statement. Such evidence would only tend to show a witness had a poor recollection, was uncertain of the facts, or for some unknown reason remembered the facts differently at trial than he did before. It might throw doubt on credibility, even though the witness had intended to tell the truth. The affidavit here, however, indicates intentional falsehood by a state law enforcement officer of a crucial fact. It asserts he may have deliberately lied when he offered the only testimony that established an essential element of the offense with which petitioner was charged. If such facts are correct, a writ of habeas corpus should be granted. *See Smith v. Florida,* 410 F.2d 1349 (5th Cir. 1969).

■ Second, the state contends that even on petitioner's facts, the prosecutor did not know Nicholson was lying so the state did not deprive petitioner of a constitutionally fair trial. The petitioner does allege, however, that Nicholson was a state law enforcement officer. As such, he was a member of the prosecution team. If the state through its law enforcement agents suborns perjury for use at the trial, a constitutional due process claim would not be defeated merely because the prosecuting attorney was not personally aware of this prosecutorial activity. *Smith, supra,* at 1351; *Barbee v. Warden,* 331 F.2d 842, 846 (4th Cir. 1964); *Curran v. Delaware,* 259 F.2d 707, 713 (3d Cir. 1958), *citing original record in Pyle v. Kansas,* 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942).

*Shaver v. Ellis,* 255 F.2d 509 (5th Cir. 1958), the case upon which the district court relies, is inapposite. The petitioner in *Shaver* did not allege any constitutional defect in his original trial. He did not accuse any state official of manufacturing evidence against him. Instead, Shaver claimed that, since trial, another person had confessed to his alleged crime and the state procedures for considering that newly discovered evidence were constitutionally defective. The court held the procedures adequate, and said it did not have the power to reconsider the merits of a constitutionally legal conviction. 255 F.2d at 511. In contrast, Schneider directly challenges the legality of his original conviction as being fundamentally unfair.

Last, the state asserts that any error in Schneider's trial was harmless because after he was found guilty of armed robbery, the court sentenced him to only 10 years, which was within the sentencing limit allowable under the then applicable theft statute. In view of the drastic disparity between the potential sentences for the two crimes, and with no indication that the Texas court would give Schneider the maximum sentence available, or what other sentence it might give if the crime did not involve a firearm, the argument is without force. Indeed the 10 year sentence for a capital crime indicates that petitioner was not a candidate for maximum sentence.

To evaluate properly Schneider's claim, the true facts need to be known. This requires an evidentiary hearing. The state did not grant such a hearing, and it is therefore incumbent upon the federal district court to do so. *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The denial of habeas corpus relief by the district court is vacated and the case remanded for a full development of the facts and an evaluation of petitioner's claim consistent with this opinion.

VACATED AND REMANDED.