**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Lee HOLLEMAN, Charles Edward Jamerson and Henry Taylor,
Defendants-Appellants.**

**Nos. 77–1169, 77–1170, 77–1180.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1977.

Decided April 20, 1978.

Rehearing and Rehearing In Banc
Denied May 17, 1978.

Leonard V. Campanale, Mishawaka, Ind.,
Larry L. Ambler, South Bend, Ind., Ronald

A. Lev, Chicago, Ill., for defendants-appellants.

David T. Ready, U. S. Atty., South Bend, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and BAUER and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

On November 16, 1976, the defendants, Robert Lee Holleman, Charles Edward Jamerson, and Henry Taylor, were charged in a one count indictment with robbing a federal credit union in South Bend, Indiana, on October 15, 1976, of about $2,400.00, the deposits of which were insured by the Administrator of the National Credit Union Administration. Each defendant was found guilty by a jury trial. Holleman was sentenced to 20 years imprisonment, Jamerson to 10 years imprisonment, and Taylor to 15 years imprisonment.

Eight issues have been raised on appeal: (1) whether or not Holleman's arrest was illegal invalidating his confession; (2) denial of Jamerson's motion for severance; (3) whether or not Holleman's confession was voluntary; (4) whether or not the admission of Holleman's confession breached the *Bruton*[1] rule; (5) the admissibility of the testimony of an immunized witness; (6) the denial of a mistrial after outside contact with the jury; (7) the propriety of giving an aiding and abetting instruction; (8) and the sufficiency of the evidence in regard to each defendant.

We affirm.

The basic facts are not complicated. Late in the afternoon of October 15, 1976, two men, one white, Holleman, who was armed, and one black, Taylor, who was not armed, entered the federal credit union. The black male jumped up on the counter and the white male asked where the money was. A woman teller responded and the men took the money from two cash drawers and departed. Jamerson, also black, drove them to and from the vicinity of the credit union. All shared in the proceeds.

*Holleman's Arrest*

Holleman was arrested on October 17, 1976, at a South Bend, Indiana, motel by a local county police detective accompanied by two Michigan State Policemen who possessed a Michigan warrant for Holleman's arrest for another armed robbery. Incident to this arrest Holleman was searched and money, identifiable by serial numbers as money taken in the credit union robbery, was found on Holleman's person. The next day Holleman confessed. State law determines the validity of arrest for a violation of state law subject to minimum standards required by the Constitution. *United States ex rel. LaBelle v. LaVallee,* 517 F.2d 750 (2d Cir. 1975), *cert. denied,* 423 U.S. 1062, 96 S.Ct. 803, 46 L.Ed.2d 655; *Burks v. United States,* 287 F.2d 117 (9th Cir. 1961), *cert. denied,* 369 U.S. 841, 82 S.Ct. 868, 7 L.Ed.2d 846. Section 35–2.1–2–3 of the Indiana Code, paragraph 15 provides:

> The arrest of a person may be lawfully made also by an officer . . . without a warrant upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding one year . . . .

Holleman argues that nothing in the facts surrounding his arrest evidences any "reasonable information" that he was charged with a felony in the court of another state except the presence of the Michigan officers with a Michigan warrant who accompanied a county police detective of Indiana, the arresting officer. We believe the statute to have been amply satisfied. That the officers may have had some additional interest in Holleman in connection with another matter is immaterial. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), cited by defendant, we find not to be applicable to this case. We are not concerned with probable cause to justify a search warrant since the search was incident to a lawful arrest.

*Motion for Severance*

Jamerson and Taylor argue that the trial court created prejudice against

---

1. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

them by admitting Holleman's confession in violation of *Bruton*, and thus severance was necessary. It is conceded that severance need be granted only for the most compelling reasons and that the moving party must demonstrate that a fair trial cannot be had without severance, not merely that a separate trial offers a better chance for acquittal. *United States v. Allstate Mortgage Corp.,* 507 F.2d 492, 495 (7th Cir. 1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666; *United States v. Blue,* 440 F.2d 300, 302 (7th Cir. 1971), *cert. denied,* 404 U.S. 836, 92 S.Ct. 123, 30 L.Ed.2d 68. In view of our conclusion that *Bruton* was not violated, to be discussed below, we find no error in the exercise of the trial court's discretion in denying the motion for severance.[2]

### Voluntariness of Holleman's Confession

■ Holleman claims his confession was not voluntary because he was psychologically, not physically, intimidated, and therefore his confession was not the product of a rational intellect and free will. *Townsend v. Sain,* 372 U.S. 293, 307–309, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Holleman argues in support of his claim that he was a known drug addict and that he had been at the county jail for about 10 hours of questioning without food. The confession was taken by an FBI agent who interviewed the defendant for a little over an hour the evening of October 18, 1976. *Miranda* rights were first carefully given and read aloud by Holleman. Holleman then agreed to give a written statement. Based on information given by Holleman, the agent wrote out the statement. Holleman then read the statement aloud, made and initialed corrections and signed it. During the interview Holleman declined food, also a candy bar, stating he was not hungry. A

few minutes after the interview began, he requested and was given medication. The agent testified that Holleman appeared to be in good health. A local detective who was also present testified that Holleman appeared to understand what was occurring and to have full control of his senses. Nothing in this record convinces us otherwise.

### Bruton Considerations

■ Jamerson gave a partially incriminating and partially exculpatory oral statement to an FBI agent. The trial court, following *Bruton,* carefully proceeded through the agent's testimony to eliminate any implication of the other two defendants. Necessarily, the evidence of Jamerson's own personal involvement was unavoidably weakened. Holleman does not strongly urge that the court committed error in its efforts to comply with *Bruton.* Taylor, who was as affected as Holleman by the testimony of the agent concerning Jamerson's oral statement, in his brief considers *Bruton* to have been observed. So do we.

■ However, Holleman's redacted written statement was strongly objected to by both Taylor and Jamerson. The problem was not resolved by the trial court in complete uniformity with the ruling on Jamerson's oral statement. With the Jamerson statement, no reference was permitted to the fact that when Jamerson drove his car to a location near the credit union that he was accompanied by Holleman or Jamerson, or by anyone else. The distinction in issue is that in Holleman's written statement it is clear that he was assisted by two others, though his accomplices remain in the confession unnamed and not identified by race, age, size or any other means except by sex.[3]

---

2. Had the motion for severance been granted, that portion of Jamerson's own statement to an FBI agent admitting that he had driven the other two individuals to the vicinity of the credit union would have been admissible against him, and not excluded from the joint trial by reason of *Bruton.*

3. Holleman's written statement, taken by the FBI agent in the form as admitted into evidence, follows:

"I, Robert Lee Holleman, born August 28, 1953 at Mishawaka, Indiana, voluntarily give the following information to Edward F. Traeger, who has identified himself as a Special Agent of the Federal Bureau of Investigation, and Detective Sargeant Jerry R. Szweda,

Holleman did not testify. The trial court specifically instructed the jury as to the limited nature of the evidence just prior to its admission and again in the final instructions.

It is the position of Jamerson and Taylor that even though they were not named in Holleman's confession, that when the redacted confession was considered along with the other evidence, they were clearly revealed to be the "male individuals" referred to in the confession. That argument relies on what is sometimes referred to as "contextual inculpation." *Bruton* held that the introduction into evidence of the confession of a non-testifying defendant in a joint trial incriminating a codefendant may violate the latter's Sixth Amendment right of cross-examination regardless of the giving of an appropriate limiting instruction. In *Bruton*, 391 U.S. at 135, 88 S.Ct. at 1627, the Court recognized that, "[n]ot every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions" as a defendant is entitled to a fair trial, not a perfect one. The Court then specifically characterizes the extra-judicial statements of the codefendant in that case to be "powerfully incriminating." In footnote 10, 391 U.S. at 134, 88 S.Ct. 1620, the *Bruton* Court notes, without specific approval or disapproval, the method used by some courts, and in this case, of deleting specific references to codefendants in the confession.

Many courts in varying circumstances have approved the redacting procedure. This court, in *United States v. Gregg,* 414 F.2d 943 (7th Cir. 1969), *cert. denied,* 399 U.S. 934, 90 S.Ct. 2251, 26 L.Ed.2d 806

(1970), a case arising shortly after the publication of *Bruton,* approved the use of a codefendant's confession after deletion of incriminating references to codefendants even in the absence of limiting instructions. We need not reconsider that more tenuous situation, since ample instructions were given in this case.

Defendant cites *United States v. Cook,* 530 F.2d 145 (7th Cir. 1976), *cert. denied,* 426 U.S. 909, 96 S.Ct. 2234, 48 L.Ed.2d 835, as being directly analogous to the present case. There is a significant distinction. In *Cook,* while an officer was testifying about an oral statement given to him by a defendant, the witness quoted that defendant as referring to "his brother Larry." That identifying reference to a codefendant was sufficient to cause reversible error. We do not retreat from that holding. Analogous, however, to the present case is our holding in *United States v. English,* 501 F.2d 1254 (7th Cir. 1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 811, in which the use of a confession was approved which made known that two other individuals were involved, but without identifying or describing them. To hold what was done in the present case to be reversible error would be an extension of *Bruton.* We see no need in these circumstances to further cripple the use of confessions in joint trials. See also *United States v. Hendrickson,* 542 F.2d 21 (6th Cir. 1976); *United States v. Trudo,* 449 F.2d 649 (2d Cir. 1971), *cert. denied,* 405 U.S. 926, 92 S.Ct. 975, 30 L.Ed.2d 799; *United States ex rel. Nelson v. Follette,* 430 F.2d 1055 (2d Cir. 1970), *cert. denied,* 401 U.S. 917, 91 S.Ct. 899, 27 L.Ed.2d 818; *United States v. Dady,* 536 F.2d 675 (6th Cir. 1976).

who has identified himself as an officer of the South Bend Police Department. No force, coercion or promises have been used against me. R.L.H. On October 15, 1976, Friday, I and one other male individual entered the AAA Federal Credit Union, 112 N. Bendix Drive, South Bend, Indiana and robbed at gun point, three female employees of cash that was located in cash drawers in the Credit Union office. The total amount of cash taken was about $2,400.00. After leaving the credit union office, we went to a 1976 Pontiac Grand Prix, black in color, about a block east from the credit union. This car was being driven by a third male individual who had previously planned this robbery with myself and the individual who helped me conduct the robbery. We drove to the home of the third individual where we divided the cash between the three of us, each getting $800.00. The gun that I used in the robbery was left at the home of this individual. I have read this statement, consisting of this page only, and signed it because it is true and accurate to the best of my knowledge."

/s/ "Robert L. Holleman"

### Testimony of Immunized Witness

■ Consuelo Williams, Holleman's girl friend, spent some time together with him, the other two defendants, and others immediately following the events giving rise to this case. She was called as a witness by the government and granted use immunity. We understand Holleman's argument to be that since Williams was sympathetic to Holleman, not the government, immunity coerced Williams into testifying against her will; and secondly, that the immunity was not broad enough to fully protect her from state prosecution. Being Williams' boyfriend gives Holleman no standing to complain about the immunity granted to Williams. *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968). The immunity granted to Williams adequately protected her Fifth Amendment rights for any related federal or state prosecutions, except for perjury in the course of her testimony. The immunity granted for the required testimony was coextensive with her constitutional privilege. *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1963); *United States v. Watkins,* 505 F.2d 545 (7th Cir. 1974). We view this argument as frivolous.

### Denial of Mistrial

■ Holleman maintains that it was error for the trial court to deny his motion for a mistrial when it was determined that during the trial two jurors had received anonymous telephone calls concerning the trial. Both jurors were dismissed. Two alternates were available and substituted. The procedure followed by the trial judge was generally as urged by defense counsel at the time. It was carefully handled so as not to infect the remaining members of the jury. There was no prejudice. *Brock v. North Carolina,* 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456 (1953), cited by Holleman, is not applicable.

### Jury Instruction

■ Jamerson, the driver of the car, who did not enter the credit union, contends that since he was charged only as a principal in the substantive offense, it was error for the trial court to give the standard aiding and abetting instruction. If the trial court determines that the evidence warrants the instruction, it is immaterial, although preferable, whether 18 U.S.C. § 2[4] is actually charged in the indictment. An aider is punishable as a principal. *Levine v. United States,* 430 F.2d 641 (7th Cir. 1970), *cert. denied,* 401 U.S. 949, 91 S.Ct. 962, 28 L.Ed.2d 232.

### Sufficiency of the Evidence

■ All three defendants individually challenge the sufficiency of the evidence.

Holleman confessed and we have found that confession to be admissible. In addition, Williams, Holleman's girl friend, testified that Holleman told her he was going to rob the credit union, and on one occasion had gone to look it over but decided the time was not right. He would accomplish it later he told her. After the robbery on the same day, Holleman and Williams traveled to Chicago where Holleman, although unemployed, spent about $400 for drugs. During the trip he discussed the successful accomplishment of the robbery with her. When arrested, Holleman possessed some of the money from the robbery identified by serial numbers.

The evidence showed that Taylor, who accompanied Holleman into the credit union, was a frequent associate of the other two defendants. No one at the scene of the robbery identified either Holleman or Taylor, except to generally give a description as to race and clothes. There was some confusion as to which robber wore the stocking mask and hat which were found abandoned

4. § 2. Principals
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

in the alley behind the credit union immediately following the robbery. An expert from the FBI laboratory testified that he had examined the human hairs found on those items and compared them to Taylor's hair. They matched in every one of the twenty microscopic, identifiable characteristics. The expert further testified that since the hairs were negroid, they could not be Holleman's. No other hairs were found that did not match Taylor's. Even though the identification possible through hair sample comparison is not as positive and absolute as identification by fingerprints, the expert testified that in thousands of similar examinations, he had never found hair that matched in all microscopic characteristics that did not come from the same person. On the day following the robbery, all three defendants gathered in the motel room rented by Holleman. Upon arrival, Jamerson expressed concern about the police being around, but assured Holleman, who was upset, that many turns had been taken on the way there in order to foil any attempt to follow them. All three defendants had a private discussion in the bathroom. Holleman warned Jamerson and Taylor not to "discuss it in front of Danny (another party present in the motel room) because he doesn't know about it." What "it" may have referred to is not specific. When Jamerson and Taylor left, Holleman told the other person, Danny, not to talk about whatever he may have heard.

Jamerson owned a 1976 black Grand Prix automobile which he used to transport Holleman and Taylor to and from the vicinity of the credit union at the time of the robbery. A young newsboy observed the trio in the car at the location although he could not identify them except by a general description. The newsboy mistook Jamerson's black Grand Prix for a black Monte Carlo. Jamerson claims he didn't know what had been planned by the other two defendants, or what they had done when they returned to the car with a large sum of money. Williams testified that on occasion Jamerson picked up Taylor and Holleman in his car, perhaps even on the same day of the robbery, but her memory, she claimed, was not clear about it. Jamerson was one of those present at the motel meeting, already mentioned, the day after the robbery. When Jamerson was arrested, he also possessed some of the credit union stolen cash identifiable by serial numbers. At that time Jamerson denied any knowledge of the robbery or even knowing Holleman or Taylor. Subsequently, however, he admitted driving to the vicinity of the credit union at the time of the robbery. Jamerson had recently served in the army with Taylor and had lived with him occasionally since his discharge.

Our task is not to retry this case from the record. "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Zarattini,* 552 F.2d 753 (7th Cir. 1977), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262. After examining the record, we believe there was substantial evidence, direct and circumstantial, together with the reasonable inferences to be drawn therefrom, from which the jury could arrive at its finding of guilt beyond a reasonable doubt as to each of the defendants. *United States v. Isaacs,* 493 F.2d 1124, 1146 (7th Cir. 1974), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146. Any inconsistencies, discrepancies, and ambiguities which may have existed, along with credibility, are matters better left for resolution by the jury. The jury was fully and properly instructed on the issues we have been considering.

AFFIRMED.

FAIRCHILD, Chief Judge, concurring in No. 77–1169 (Holleman), and dissenting in No. 77–1170 (Jamerson) and 77–1180 (Taylor).

I would affirm the Holleman conviction. Under *Bruton,* however, it seems to me that Jamerson and Taylor were prejudiced by the reception in evidence of Holleman's

statement. Although Holleman's statement did not name the others, it supplied significant corroboration of other evidence of their guilt.

There was other evidence identifying Jamerson as the driver of the black Grand Prix and Taylor as their companion. Holleman's statement informed the jury that the driver (Jamerson) "had previously planned this robbery," that their companion had participated in the robbery, and that upon division of the loot each had received $800.

The short of it is that omitting the names was not sufficient redaction to get by *Bruton*. Jamerson and Taylor are, in my opinion, entitled to a new trial.