**Robert Lee HOLLEMAN, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 82–1324.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1983.

Decided Nov. 28, 1983.

Rehearing Denied Jan. 18, 1984.

Daniel C. Marson, Winston & Strawn, Chicago, Ill., for petitioner-appellant.

Evan M. Spangler, Asst. U.S. Atty., South Bend, Ind., for respondent-appellee.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and SWYGERT, Senior Circuit Judge.

CUMMINGS, Chief Judge.

This is an appeal from the denial of a motion to vacate a summary dismissal of a Section 2255 motion to vacate sentence as well as an appeal from the denial of motions for an evidentiary hearing and an expanded record.

## I

On February 4, 1977, Robert L. Holleman was convicted in the United States District Court for the Northern District of Indiana of robbing a federally-insured credit union in violation of 18 U.S.C. § 2113(a). District Judge Allen Sharp imposed a sentence of twenty years' imprisonment to run consecutively with a state sentence Holleman was then serving as a result of a state court conviction. On appeal, this Court affirmed the federal conviction, rejecting, *inter alia*, Holleman's allegation that a confession obtained from him by FBI Agent Traeger should have been suppressed as involuntary. *United States v. Holleman*, 575 F.2d 139 (7th Cir.1978).

On October 13, 1981, Holleman filed in the district court a *pro se* motion to vacate his sentence and reverse his conviction pursuant to 28 U.S.C. § 2255.[1] Holleman's basis for this motion was that his conviction had been obtained through the use of perjured testimony because, subsequent to his federal conviction, the Superior Court of Lake County, Indiana, suppressed a confession which Holleman had made to a St. Joseph County police officer on the day

after he had made the statement to the FBI.[2] The reason for suppression was that testimony of the officer, McAlister, indicated that Holleman was suffering from withdrawal symptoms (specifically, "shaking and sweating going into doubled-up positions") at the time he made the state confession (Pet.Br. 12). McAlister testified further that Holleman had exhibited these same symptoms the day before the state confession—that is, the day Holleman made his confession to the FBI agent, Traeger (Pet.Br. 11–12). Holleman concluded that because Traeger had testified that Holleman appeared in good health during their interview on October 18, Traeger must have perjured himself.

Without conducting a hearing, Judge Sharp denied the Section 2255 motion for two reasons: First, since the issue of voluntariness of Holleman's confession to Traeger had been raised and decided at both the federal suppression hearing and on the direct appeal from the federal conviction, it was not necessary to consider it again on a Section 2255 motion despite the subsequent state court suppression of a later confession to a different person. Secondly, Holleman's failure to allege that the United States had knowingly used perjured testimony made the motion defective.

Holleman then moved the district court to vacate this order and also filed motions for an evidentiary hearing on the Section 2255 motion and for an expanded record to include the transcript from the state court proceedings. Further, he supported his original Section 2255 petition with a Memorandum of Law in which he juxtaposed excerpts of the state transcript in which McAlister described the withdrawal symptoms he observed on October 18 and 19 with

---

1. Initially Holleman was assisted by a "jailhouse lawyer" in bringing this collateral attack on his conviction. However, when the district court's order was appealed, this Court appointed legal counsel to assist him.

2. The original Section 2255 motion itself is somewhat confusing as to whether the state court suppressed the confession admitted into evidence in the federal proceedings or a differ-

ent confession. However, the Memorandum of Law submitted to Judge Sharp in connection with the motion to vacate the denial of the Section 2255 motion makes it clear that the suppressed confession was the October 19 confession obtained by St. Joseph County, Indiana, police officer McAlister and not the one obtained on October 18 by FBI Agent Traeger (Pet.Br. 12–13).

an excerpt from the transcript from the earlier federal proceedings in which Traeger testified to his impressions of Holleman's good physical condition on October 18.[3] The district court denied all three motions and Holleman filed an appeal with this Court.

## II

██ Section 2255 provides the means by which a prisoner in federal custody may obtain collateral review of a federal court-imposed sentence. Even though he was incarcerated in state prison when he initiated this action, Holleman meets the federal custody requirement because he was scheduled to begin serving his federal sentence upon completion of his state sentence. See, e.g., *Simmons v. United States,* 437 F.2d 156 (5th Cir.1971).

██ A federal prisoner who brings a Section 2255 motion seeking to vacate his sentence is entitled to a hearing "[u]nless the motion and the files and the records in the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Although the terms "motion," "files," and "records" have not been specifically defined by Congress or the courts, Section 2255 has been applied to allow the district court to review "the motion and any annexed exhibits and the prior proceedings in the case." Rule 4, Rules Governing Proceedings in the United States District Courts under Section 2255 (1976). Also, district judges may draw on circumstances in their "personal knowledge or recollection" in determining whether a summary dismissal or an evidentiary hearing is appropriate. *Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473, see also *Burris v. United States,* 430 F.2d 399, 401 (7th Cir. 1970), certiorari denied, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824.

██ Thus it is clear that the district court could properly review not only the 1977 federal transcripts but also the Memo-

randum of Law and other documents submitted to it in connection with the pendency of Holleman's Section 2255 motion. The five 1977 federal transcripts comprised "prior proceedings"; the memorandum and other documents are in the nature of "annexed exhibits" as well as within the personal knowledge of the district judge who passed on the Section 2255 motion.

For the reasons explained below, we find that the Section 2255 motion, files and records appropriately before the district court "conclusively show that the petitioner is entitled to no relief." Therefore, we affirm the district court's refusal to vacate its order denying Holleman's Section 2255 motion, as well as its denial of the motions for an evidentiary hearing and an expanded record.

## III

██ To establish a prima facie case that a conviction should be vacated because obtained through the use of perjured testimony, a petitioner must show that the testimony was in fact false and the government used it with actual or constructive knowledge of the falsity. *United States v. Robinson,* 585 F.2d 274, 279 (7th Cir.1978), certiorari denied, 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051. Although Holleman's motion did not expressly allege the government's actual or constructive knowledge, he argues now that we must construe his *pro se* motion liberally and read this missing element into his motion (Pet.Br. 26, citing *Zurita v. United States,* 410 F.2d 477 (7th Cir.1969)).

██ However, *Zurita* does not require us to read into Holleman's motion an implied allegation of the government's actual or constructive knowledge. In *Zurita,* the petitioner alleged facts to support his claim; the question was whether those facts provided sufficient support. See 410 F.2d at 480. Here, however, Holleman did not allege the knowledge element at all. Nor

---

**3.** Holleman also attached a letter from a psychiatrist relating what Holleman had told him in November 1980 about his history of heroin addiction and about his withdrawal symptoms at the time of his arrest and interrogation in October 1976. The psychiatrist found him to be of normal to high normal intelligence without any diagnosis of major mental illness.

was his statement that McAlister's and Traeger's testimony differed sufficient to allow us to infer an allegation of this knowledge by the United States. Cf. *United States v. Robinson,* 585 F.2d at 279 n. 9 (differences in two statements by a single witness "insufficient to raise the issue" of government knowledge).

Furthermore, the Section 2255 motion, files and records in this case conclusively rebut Holleman's claim that because McAlister's state court testimony was "directly opposite" that of Traeger in federal court (Pet.Br. 9), he was convicted on the basis of perjured testimony. In fact the testimony of the state and the federal agents does not conflict at all because the two officials each testified to observations of Holleman at different times and under different conditions. For example, McAlister testified to his observations at the time he obtained Holleman's statement on October 19, the day after Holleman's meeting with Traeger:

[Q] Did you observe Mr. Holleman shaking and sweating going into doubled-up positions while the statement was taken?

[A] Other than being nervous, that's about it.

[Q] Is your answer to my question yes or no?

[A] It would be yes.

\* \* \* \* \* \*

[Q] During the statement?

[A] Yes.

[Q] Which statement?

[A] During mine [the one on October 19th].

Pet.Br. 12. The petitioner's memorandum goes on to clarify that Holleman gave his statement to McAlister on the day after Holleman's meeting with the FBI agent (Pet.Br. 12–13).

Although McAlister also testified that he observed Holleman suffering similar withdrawal symptoms on October 18, this in itself does not contradict Traeger's testimony that he observed Holleman on that day as pale but otherwise in good health when his statement was taken (Pet.Br. 20).

While the record does not specify precisely when on October 18 McAlister saw Holleman, it was not during the Holleman-Traeger interview. Holleman himself made clear in the federal trial proceedings that only he, Traeger and South Bend, Indiana, Police Sergeant Szweda were present at that interview. 1977 Fed.Tr. 124–125.

Furthermore, even if McAlister saw Holleman immediately before Traeger's interview, his observations do not contradict Traeger's, because Holleman received medication to ease his withdrawal symptoms at the outset of the Traeger interview. 575 F.2d at 142. Holleman does not deny that he received the medication, but argues only that expert testimony is necessary to determine its "possible ameliorative effect" (Pet.Br. 23). However, this information was already before the Section 2255 court because in the original district court proceedings, Holleman himself explained that the medication immediately "kept back my withdrawal symptoms—took away the stomach cramps and dizziness and weakness." 1977 Fed.Tr. 168–169. Therefore, differences between McAlister's and Traeger's observations are due not to perjury but to the fact that the two officials observed Holleman at different times and under different conditions.

## IV

Holleman has failed to meet the minimum requirements for obtaining vacation of his sentence by means of a Section 2255 motion. His motion itself fails to allege the government's actual or constructive knowledge that it was using perjured testimony. And the record conclusively establishes that the testimonial differences are due to the different circumstances surrounding the different observations and not, as Holleman alleges, to perjury. Consequently, we need not decide, as the dissent urges, whether a federal prosecutor must be held to have knowledge of the perjury when a federal law enforcement officer's testimony is perjured.

Therefore, we affirm the district court's denial of Holleman's motion to vacate the denial of his Section 2255 motion as well as the denial of the motions for an evidentiary hearing and an expanded record.

SWYGERT, Senior Circuit Judge, dissenting.

Robert Holleman was convicted in federal court on February 4, 1977. A crucial piece of evidence leading to Holleman's conviction was a confession made by Holleman to FBI Special Agent Edward Traeger. Holleman claimed at a suppression hearing in the federal court and on direct appeal from the federal conviction that the confession was not voluntary because, at the time it was given, Holleman was suffering severe symptoms of heroin withdrawal. On each occasion, the court was persuaded that the confession was voluntary by Traeger's testimony that Holleman appeared "pale" but in "good health."

Subsequent to the federal trial and conviction, Holleman was tried in an Indiana state court. During this trial, Officer McAlister of the St. Joseph County Police Department testified that Holleman was suffering common drug withdrawal symptoms, including shaking, sweating, and doubling over, during his interrogation by state officers. The interrogation of Holleman by McAlister occurred on the same day that Holleman was interrogated by Traeger.

The testimony of McAlister was not available during Holleman's trial in the district court. Thus, it was not a part of the record on direct appeal. Holleman now seeks to have a federal court examine, for the first time, the testimony of Traeger in light of McAlister's testimony to determine whether Traeger perjured himself in federal court. Because I believe that the testimony of McAlister raises a material question of fact concerning the veracity of Traeger's testimony that cannot be determined on the present record, I would remand the case to the district court for an evidentiary hearing at which the state court testimony could be fully considered.

A federal prisoner is entitled to postconviction relief under section 2255 if the government knew or should have known that one of its witnesses was giving perjured testimony.* *See United States v. Robinson,* 585 F.2d 274, 279 (7th Cir.1978), *cert. denied,* 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051 (1979). The district court is required to hold a hearing on a section 2255 petition, "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. *See also Machibroda v. United States,* 368 U.S. 487, 494–95, 82 S.Ct. 510, 513–14, 7 L.Ed.2d 473 (1962). The record in this case consists of the 1977 federal transcripts and a memorandum of law prepared by Holleman with the aid of Richard Lee Owen, a fellow prisoner. These documents raise far more questions than they answer.

The testimonies of Holleman and Traeger recorded in the transcript of the federal suppression hearing contain serious conflicts. Holleman testified that during the interrogation Traeger asked about Holleman's heroin addiction, and offered Holleman a candy bar with the explanation that candy bars help ease withdrawal symptoms. Holleman testified that he requested food and medication and was told he would receive both only after the interrogation was completed. Traeger testified that Holleman was offered food but declined it. Traeger also testified that Holleman requested medication and that medication was administered to Holleman by a county jailer approximately twelve minutes into the interview. Traeger stated that he was unaware at that time that Holleman was a heroin addict and did not know why Holleman was requesting medication. (It is slightly incredible that an FBI agent, in the

---

* Some courts have held that a section 2255 petitioner must also show that the perjured testimony was material. *See, e.g., Elliott v. Beto,* 474 F.2d 856, 857 (5th Cir.), *cert. denied,* 411 U.S. 985, 93 S.Ct. 2284, 36 L.Ed.2d 963 (1973);

*McBride v. United States,* 446 F.2d 229, 232 (10th Cir.1971). Agent Traeger's testimony was clearly material, thus materiality is not an issue in this case.

process of interrogating a federal prisoner suspected of bank robbery, would not question the prisoner's request for medication and would not at least suspect a drug dependency problem.) These conflicts were resolved against Holleman at trial and on direct appeal, but a substantiated claim that Traeger's testimony was perjured may compel reconsideration of that determination. *See Pyle v. Kansas,* 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Schneider v. Estelle,* 552 F.2d 593, 594–95 (5th Cir. 1977); *Teague v. United States,* 499 F.2d 1381, 1384–85 (7th Cir.1974).

Holleman attempted to substantiate his claim in a memorandum of law consisting of excerpts from the state trial juxtaposed with excerpts from the federal trial. The excerpts contain testimony of McAlister that Holleman was a rumored heroin addict and that on October 18th, Holleman was shaking, sweating, and doubled over. Traeger testified that he did not know that Holleman was an addict and that on October 18th, Holleman did not look ill.

The majority opinion concludes that the differences between McAlister's and Traeger's observations are due "to the fact that the two officials observed Holleman at different times and under different conditions." The majority concedes, however, that the record fails to indicate at what time McAlister saw Holleman. The majority then explains that even if McAlister saw Holleman immediately prior to Traeger's interrogation of Holleman, the difference in Holleman's condition may be explained by the fact that "Holleman received medication to ease withdrawal at the outset of the Traeger interview." The only basis in the record for concluding that Holleman received medication at the outset of the interview is the testimony of Traeger, the very testimony which Holleman is alleging was perjured.

Even assuming that Holleman did receive medication to ease his withdrawal symptoms, the record fails to indicate what transpired between Traeger and Holleman before the medication was administered or what effect the medication had on Holle-man. The majority notes that Holleman testified at the federal suppression hearing that the medication "kept back" his withdrawal symptoms. Holleman's testimony, however, cannot substitute for expert analysis. Moreover, Holleman did not testify and the record does not indicate when the medication begins to take effect or how long the effect of the medication lasts. An evidentiary hearing was necessary to resolve these questions.

The district court found and the majority here affirmed that Holleman's section 2255 petition was fatally defective because it failed to allege that the government had actual or constructive knowledge of Traeger's alleged perjury. This court has held that *pro se* motions of prisoners should be viewed liberally and the specificity expected of a lawyer should not be required. *Zurita v. United States,* 410 F.2d 477, 480 (7th Cir.1969). The district court at least should have given Holleman an opportunity to amend his petition to plead the government's knowing and intentional use of the allegedly perjured testimony.

There is an additional difficulty with dismissing Holleman's petition for failing to allege knowledge on the part of the government. At oral argument, petitioner's counsel suggested that a constitutional deprivation requiring postconviction relief occurs when an FBI agent investigating a criminal case intentionally commits perjury in federal court. This is a question of first impression for this court and warrants serious consideration.

An investigative officer who works closely with a prosecutor in gathering and presenting the evidence against a defendant is not in the same position as other prosecution witnesses. At least three other circuits have recognized a link between investigative officers and the government in considering a claim of perjured testimony. In *Schneider v. Estelle,* 552 F.2d 593 (5th Cir. 1977), the Fifth Circuit decided a case very much like the one before this court. Petitioner for a writ of habeas corpus presented the district court with newly discovered evidence indicating that a state police officer deliberately committed perjury at trial concerning petitioner's use of a firearm. The

district court dismissed the petition without a hearing. The court of appeals found that petitioner stated facts which, if true, required postconviction relief, and remanded the case for an evidentiary hearing. In response to the state's contention that the state was not liable because the prosecutor had no knowledge of the officer's perjury, the court held, "[i]f the state through its law enforcement agents suborns perjury for use at the trial, a constitutional due process claim would not be defeated merely because the prosecuting attorney was not personally aware of this prosecutorial activity." *Id.* at 595; *see also Wedra v. Thomas,* 671 F.2d 713, 717 (2d Cir.), *cert. denied,* 458 U.S. 1109, 102 S.Ct. 3491, 73 L.Ed.2d 1372 (1982) ("the knowledge of a police officer [that a key prosecution witness committed perjury at trial] may be attributable to the prosecutor if the officer acted as an arm of the prosecution"); *Curran v. State,* 259 F.2d 707, 713 (3d Cir.1958) (habeas corpus relief granted because "the knowingly false testimony" of a state detective "was sufficient to cause the defendants' trial to pass the line of tolerable imperfection and fall into the field of fundamental unfairness").

A link between investigative officers and the government has been recognized in other contexts as well. The intentional concealment of material information by government investigators has been held attributable to the government. *See Freeman v. State,* 599 F.2d 65, 69–70 (5th Cir. 1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980); *United States v. Butler,* 567 F.2d 885, 891 (9th Cir.1978) (per curiam); *United States v. Esposito,* 523 F.2d 242, 248 (7th Cir.1975), *cert. denied,* 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 768 (1976); *Barbee v. Warden,* 331 F.2d 842, 846 (4th Cir.1964). In *United States v. Butler, supra,* the Ninth Circuit explained the rationale: "Since the investigative officers are part of the prosecution, the taint on the trial is no less if they, rather than the prosecutor, were guilty of nondisclosure." 567 F.2d at 891; *accord Barbee v. Warden,* 331 F.2d at 846; *see also United States v. Bryant,* 439 F.2d 642, 648 n. 11 (D.C.Cir. 1971) ("suppression of evidence by investigative officials—no less than by the prose-

cution—corrupts the truth seeking function of the trial.") This rationale applies with equal force in the case of perjury by a government investigator.

The argument for postconviction review and relief is particularly strong in this case. Holleman is requesting a district court to review a claim that an FBI investigator perjured himself at a federal trial. Perjury is always an affront to our system of criminal justice. A federal reviewing court must be especially concerned by a claim that a federal officer intentionally committed perjury in federal court. A holding that such perjury, if it occurred, affords a basis for postconviction relief would not impose a federal rule on state officers or state judicial proceedings. Finally, this case requires the court to draw only a single link between a governmental investigator and the government rather than a chain between a prosecution witness, an investigator, and the government. In sum, section 2255 relief on the basis suggested by petitioner may be necessary to vindicate our federal justice system and to deter future misconduct by federal officers.

For the foregoing reasons, I dissent from the majority opinion. I would remand the case to the district court with an order to grant petitioner's motions for an expanded record and an evidentiary hearing.