Lewis Turner BOND, Jr., a/k/a Omar Ameen Hameen, Appellant,

v.

Raymond K. PROCUNIER, Director of the Virginia Department of Corrections, Appellee.

No. 84-6530.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1985.

Decided Jan. 2, 1986.

Christopher Varner (Randolph & Truitt, Washington, D.C., on brief), for appellant.

Todd E. LePage, Asst. Atty. Gen. (William G. Broaddus, Atty. Gen., Richmond, Va., on brief), for appellee.

Before HALL and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

Lewis Turner Bond, Jr., appeals from the district court's order denying his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. We affirm.

## I.

Bond was convicted by a jury on February 8, 1977, of first degree murder in the shooting death of Michael Victor Brown. In a discovery motion which he filed before trial, Bond requested, *inter alia:*

All material now known to the Commonwealth or which may become known or which through due diligence could become known from the investigating officers or the witnesses in this case, which is exculpatory in nature or favorable to the accused, or which is or may lead to exculpatory material. This request includes reports of any investigations carried out by the police of suspects other than the defendant.

The trial court granted this request; however, it denied other defense requests for summaries of statements obtained by the police during the investigation.

The evidence presented against Bond at trial consisted principally of the testimony of Edward Charles Roberts. Roberts had initially been charged with the murder. He was later granted immunity from prosecution, established in a new identity and job under the federal witness protection program, and given other benefits in exchange for his cooperation and testimony against Bond. Roberts testified that Bond said he was going to "bump off" Brown because Brown was a "snitch." Roberts further stated that subsequently he, Bond, Brown, and a man named Pop Murray, all went driving in Brown's car. According to Roberts, Brown drove the car while Bond sat in the back seat directly behind Brown. Roberts testified that he sat in the passenger's seat next to Brown and that Murray sat behind him (Roberts) in the back seat. Roberts stated that during the drive Bond shot Brown in the back of the head. The medical examiner testified that Brown died from four bullet wounds to the back of the head.

Bond did not testify at trial but attempted to undermine Roberts' credibility by demonstrating inconsistencies between his testimony and prior statements. Bond also introduced evidence that he was left-handed while the bullet wounds were to the right side of Brown's head.

Following the close of the case, the trial court instructed the jury, *inter alia,* as follows:

The Court instructs the jury that a person is presumed to intend the natural and probable consequences of his acts; and where a mortal wound is inflicted with a deadly weapon, in the previous possession of the slayer, without any, or upon slight provocation, the killing is presumed to be willful, deliberate and premeditated, and throws upon the accused the necessity of proving extenuating circumstances.

Bond's counsel did not object to this instruction. The jury convicted Bond of first degree murder, and he was sentenced to life imprisonment.

Subsequently, Bond appealed his conviction to the Supreme Court of Virginia, and his appeal was dismissed. He also petitioned the Supreme Court of Virginia for a writ of habeas corpus, which was denied on September 14, 1981. Thereafter, he filed this action for habeas relief in federal district court alleging, *inter alia,* non-disclosure of exculpatory evidence, unconstitutional jury instructions, and ineffective assistance of counsel.

In support of his claim of non-disclosure of exculpatory evidence, Bond submitted an affidavit of Haywood Williams, Jr., which was notarized on December 11, 1981. In that affidavit, Williams stated that he had been a suspect in Brown's murder. Ac-

cording to Williams' affidavit, an unnamed police officer had told him that the officer had overheard a telephone conversation between Williams and Roberts in which Roberts had told Williams that he had shot Brown. Williams further stated that the police recorded a statement in which he recounted the substance of his telephone conversation with Roberts and that he agreed to testify against Roberts. The district judge noted that Williams' prior convictions and criminal activity were "well known" to him. He found "no credibility in the statements made in [Williams'] affidavit" and therefore rejected Williams' statements as "not believable."

Bond also challenged the trial court's jury instruction as impermissibly shifting the burden to him. He raised counsel's failure to object to that instruction as a ground for ineffective assistance of counsel. Bond further asserted "attorney error" in failing to object as a basis for finding cause under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), so as to permit federal habeas review of the jury instruction despite counsel's failure to object at trial or to raise the issue on appeal.

The district court found that Bond's counsel was not ineffective in failing to object because the instruction was in accordance with the law of Virginia as it existed in 1977, and because the Supreme Court decision establishing the unconstitutionality of the instruction was still two years away. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The district court further found that Bond was not prejudiced by his counsel's failure to object.

Finding no merit in any of Bond's claims, the district court denied Bond's petition for habeas relief. Bond appeals.

## II.

On appeal, Bond alleges, as he did below, that the trial court's instruction to the jury at the close of the case was unconstitutional because it improperly shifted the burden

of proof to him. Although Bond no longer claims ineffective assistance of counsel, he contends that the district court should have found cause for his attorney's failure to object to the instruction under *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), and *Carrier v. Hutto*, 724 F.2d 396 (4th Cir.1983), aff'd en banc, 754 F.2d 520 (4th Cir.), cert. granted, —— U.S. ——, 105 S.Ct. 3523, 87 L.Ed.2d 649 (1985). Because those cases had not yet been decided at the time of his federal habeas hearing, Bond urges this Court to remand the case to the district court for an evidentiary hearing as to whether his attorney's failure to object resulted from a tactical decision or from inadvertance or ignorance. Finally, petitioner contends that he was denied due process because the prosecution failed to make exculpatory evidence available to him. We reject as meritless all of Bond's contentions.

We do not reach the merits of Bond's claim that the trial court's instruction was unconstitutional because we find that, under *Wainwright*, he has failed to show prejudice. Under the *Wainwright* test, both cause and prejudice must be shown in order to permit federal habeas review in situations such as the present one. Roberts' testimony that petitioner murdered Brown because Brown was an informant, and the evidence that Brown had been shot four times in the back of the head, clearly established intent, malice, and premeditation. Bond's attempt to undermine Roberts' credibility was ultimately unsuccessful, and there was no evidence before the jury suggesting that the murder occurred otherwise than as testified to by Roberts.

■ Because the evidence of intent, malice, and premeditation was uncontradicted, petitioner was not prejudiced by the challenged instruction and it cannot be said that his conviction violated due process standards. *Cf. Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (where the instruction is alleged to have shifted the burden of proof, the proper inquiry on habeas is " 'whether the ailing instruction by itself so infected

the entire trial that the resulting conviction violates due process'") (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). Because we find that Bond has failed to make a showing of actual prejudice, we need not address the issue of cause. *Griffin v. Aiken,* 775 F.2d 1226, 1232 (4th Cir.1985).

### III.

Bond's remaining contention is that the district court erred in dismissing, without an evidentiary hearing, his claim that the prosecution failed to disclose exculpatory evidence. In support of this claim, Bond relies upon Williams' affidavit, arguing that the information contained therein should have been disclosed to him during discovery.

▆ In reply to Bond's claim, respondent maintains that the district court acted properly in determining from its prior experience that Williams' affidavit lacked credibility, and argues that an evidentiary hearing was not necessary to resolve any factual issues. Respondent further asserts that Bond made only a general request for exculpatory material, and that Williams' affidavit did not create a reasonable doubt about petitioner's guilt which did not otherwise exist. *See United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). We find that an evidentiary hearing was unnecessary, and that the alleged non-disclosure did not affect the outcome of petitioner's trial.

There is no evidence that Williams and Roberts were even acquainted at the time that Roberts allegedly made the admission to Williams. Nor are there any circumstances that indicate the trustworthiness of Williams' statement. To the contrary, the district judge commented that he was familiar with Williams, and he found that the affidavit was unworthy of belief. Furthermore, it is significant to note that Williams' affidavit did not identify the police officer who allegedly overheard the conversation with Roberts. In addition, although the Supreme Court of Virginia denied Bond's habeas petition on September 14, 1981, Williams' affidavit was not notarized until December 11, 1981, after the state supreme court denied habeas relief. These facts bolster the district court's conclusion that the affidavit is not credible.

Moreover, an evidentiary hearing was unnecessary because even if the prosecution did have Williams' tape recorded statement and failed to disclose it to petitioner, such nondisclosure did not violate Bond's due process rights. We conclude that regardless of whether petitioner's request was a general one or a specific one, the district court properly denied Bond's petition for habeas relief because he has failed to show materiality as required under the standard enunciated in *United States v. Bagley,* —— U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *See United States v. Pflaumer,* 774 F.2d 1224 (3d Cir.1985). In *Bagley,* the Supreme Court held that nondisclosed evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* 105 S.Ct. at 3384. In the instant case, no such "reasonable probability" existed.

During Roberts' testimony at petitioner's trial, the jury was informed that Roberts had initially been charged with the murder of Brown, that Roberts was in the federal witness protection program, and that Roberts had been granted immunity from prosecution in exchange for his cooperation with the police. In addition to cross-examining Roberts about his grant of immunity, defense counsel vigorously cross-examined Roberts about his prior inconsistent statements to the police. Thus, the jury had ample evidence of Roberts' motive to testify untruthfully. Moreover, even if the defense had known about Roberts' alleged admission to Williams and had cross-examined him concerning it, it is likely that Roberts would have denied it. Under these facts, and considering Williams' poor reputation for veracity, we do not find that there was a reasonable probability that disclosure of Roberts' alleged admission to

Williams would have affected the outcome of the trial.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

BUTZNER, Senior Circuit Judge, concurring and dissenting:

I join in holding that Lewis Bond was not prejudiced by the challenged jury instruction. *See United States v. Frady,* 456 U.S. 152, 169–74, 102 S.Ct. 1584, 1595–97, 71 L.Ed.2d 816 (1982). I dissent from the denial of Bond's request for an evidentiary hearing to determine whether the prosecution withheld exculpatory material. I would probe more deeply into the circumstances of Michael Brown's death.

## I

In his pro se petition, Bond alleges that a police officer overheard Edward Roberts confess to the crime for which Bond has been convicted. Bond also alleges that the police tape recorded an interview with Haywood Williams in which Williams described Roberts's confession. Bond asserts that this exculpatory material was not disclosed despite his request, thereby violating the Due Process Clause of the fourteenth amendment. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Bond's petition suggests that the prosecution violated the Due Process Clause in two respects. First, the prosecution failed to disclose obviously exculpatory material. *See Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. Second, the allegation that a police officer overheard Roberts confess indicates that the prosecution countenanced perjury when it allowed Roberts to testify that Bond had committed the crime. *See Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972).

With his petition, Bond submitted an affidavit from Williams in support of these allegations. The state filed a motion under Federal Rule of Civil Procedure 12(b)(6) asserting that the petition failed to state a claim for relief. The state denied that any evidence was suppressed and argued that the allegations in Bond's petition were too conclusory to merit relief. The state also claimed that the petition failed to allege how the evidence was obviously exculpatory or how the state should have recognized its exculpatory nature. On appeal the state has also argued that the evidence was not material. The district court granted the motion and dismissed Bond's petition without an evidentiary hearing. Bond's earlier habeas petition in state court was likewise dismissed without a hearing.

The Supreme Court has held that "[w]here the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). It is clear from *Townsend* that because Bond never received a hearing in state court, he must be afforded a hearing in federal court.

The district court dismissed Bond's petition because it did not believe Williams's affidavit. The court stated that "[t]he prior convictions and criminal activity of Haywood Williams are well known in this court. The court finds no credibility in the statements made in his affidavit and, therefore, rejects his statements as not believable."

The district court erred in discrediting Williams's affidavit on the basis of his "prior convictions and criminal activity," none of which is part of the record in this case. Whenever a court considers matters outside the pleadings, it must convert the motion to dismiss into a motion for summary judgment, "and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). *See Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam); *Plante v. Shivar,* 540 F.2d 1233, 1234–35 (4th Cir.1976) (per curiam). The

district court failed to follow these mandatory procedures.

Moreover, a decision based on matters outside the record is impermissible because it does not afford the appellate court a basis on which to conduct its review. Credibility determinations can only be made after the judge has had the opportunity to observe the affiant in court. "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *see RKO General, Inc. v. Federal Communications Commission*, 670 F.2d 215, 225 (D.C.Cir.1981) (error to deny hearing "with the bald statement that RKO's affidavits were 'not credible' "). Thus, it was error for the district court to brush aside Williams's affidavit without holding an evidentiary hearing.

Even if the district court had been free to reject Williams's affidavit, it could not have granted the government's motion to dismiss under Rule 12(b)(6). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted); *accord Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). Bond alleges that the police overheard Roberts confess to the crime. He also asserts the existence of tape recordings that would support his claim even if Williams's affidavit were disbelieved. These allegations are not mere legal conclusions that are insufficient to survive a motion to dismiss. In *Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510,

514, 7 L.Ed.2d 473 (1962), the Court explained the principles that govern this aspect of the case:

> The petitioner's motion and affidavit contain charges which are detailed and specific.... "Not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence. On this record it is his right to be heard."

Accordingly, the district court erred in granting the government's motion to dismiss Bond's complaint for failure to state a claim.*

## II

If Bond's allegations are true, the evidence that was suppressed was material to his trial. The Supreme Court has adopted the following standard for determining whether evidence is material:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley*, —— U.S. ——, 105 S.Ct. 3375, 3384, 3385, 87 L.Ed.2d 481 (1985).

Roberts was the only eye witness to testify at Bond's trial. Without his testimony, Bond could not have been convicted. It is true that Roberts was cross-examined as to his motive to lie. It is also true that the jury was informed that Roberts originally had been charged with the crime. However, to ask the jury to infer that Roberts was lying is far different from presenting

---

* For cases that have recognized a petitioner's right to an evidentiary hearing under facts similar to those presented in this case, see *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir.1978) ("The district judge cannot credit the recanting witnesses' trial testimony and discredit their affidavits without affording appellant an opportunity to prove the allegations."), and *Schneider v. Estelle*, 552 F.2d 593 (5th Cir.1977) (petitioner entitled to hearing on claim that policeman committed perjury where allegation is supported by affidavit from government informant).

direct evidence of his guilt. Bond would have been in a much better position to cast doubt on the testimony of his principal accuser if he had been able to present evidence of Roberts's confession. In addition to impeaching Roberts, this evidence would also tend to exculpate Bond. Williams's testimony would be admissible as substantive evidence that Bond did not kill Brown. At Bond's trial, the truth of Roberts's confession, and the credibility of Williams, who repeated the confession, would have been issues for the jury. *See Morris v. Commonwealth*, 229 Va. 145, 326 S.E.2d 693 (1985). Bond's inability to develop this evidence clearly is "sufficient to undermine confidence" in his conviction. *Bagley*, 105 S.Ct. at 3384. Accordingly, I would remand this case for an evidentiary hearing to determine whether the prosecution failed to disclose evidence that Roberts had confessed to the crime for which Bond stands convicted.