900 F.2d 257
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Bruce RECKMEYER, Defendant-Appellant.
 No. 89-7598.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 8, 1989.
Decided: April 2, 1990.
Rehearing and Rehearing In Banc Denied June 1, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis III, District Judge. (CA-88-954-AM; CR-85-10-A)
 William Benjamin Moffitt, William B. Moffitt & Associates, Alexandria, Va., for appellant.
 William Graham Otis, Senior Litigation Counsel, Alexandria, Va., for appellee.
 Lisa Bondareff Kemler, Kerry C. Connor, William B. Moffitt & Associates, Alexandria, Va., for appellant.
 Henry E. Hudson, United States Attorney, Alexandria, Va., for appellee.
 E.D.Va., 709 F.Supp 680.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and CHAPMAN, Circuit Judges.
 PHILLIPS, Circuit Judge:
 
 
 1
 Robert Bruce Reckmeyer, a federal prisoner convicted on a guilty plea to four felony counts of a multi-count drug conspiracy indictment, appeals from the order of the district court dismissing his petition under 28 U.S.C. Sec. 2255 to vacate sentence. Reckmeyer alleged that misconduct on the part of his attorney created a conflict of interest that deprived him of his fifth and sixth amendment rights to effective, conflict-free counsel. The district court granted the government's motion to dismiss the petition on the basis that even if the allegations of a prejudicial conflict of interest were true, Reckmeyer had waived the right to conflict-free counsel. We agree, and affirm.
 
 
 2
 * Disposition of this case turns on the facts alleged in Reckmeyer's petition, which, for purposes of this appeal, we accept as true.[1] In April 1983, Reckmeyer learned that he was the target of a grand jury investigating narcotics trafficking. He retained John M. Dowd as counsel. From that time forward until Reckmeyer pled guilty and was sentenced in March 1985 on four charges arising from a conspiracy to possess and distribute marijuana and hashish, Reckmeyer's version of Dowd's representation is a tale of coercion, fee gouging, ethical violation, and illegality. Reckmeyer's petition charges that Dowd's personal knowledge of facts underlying the government's indictment and additional crimes committed to obtain funds to pay Dowd's fees created an actual conflict of interest that deprived Reckmeyer of his constitutional right to effective counsel.
 
 
 3
 At their first meeting, Dowd indicated that he would require a $100,000 retainer to represent Reckmeyer. Reckmeyer alleged that he raised $90,000 from legitimate sources and paid that amount to Dowd. He then confided the details of his criminal involvement and his financial holdings to Dowd. Dowd soon informed Reckmeyer that he would need $500,000 to defend him. Reckmeyer at that point sought the advice of a family attorney. As reported in his testimony before a grand jury investigating possible criminal conduct by Dowd:[2]
 
 
 4
 I told [the family attorney] that I was under, let me back up, told him that there was a Grand Jury sitting, investigating me and my marijuana activities and that I had talked to a lawyer by the name of John Dowd. I explained to him who had suggested that I go see Dowd.
 
 
 5
 I explained to him that I had told John Dowd about all my involvement, even though I didn't discuss my involvement with [the family attorney]. I told him that I was free and candid with John Dowd. I told him that the first day that he told me that 100,000 would be, that he could handle my case for 100,000. I told him that after two weeks of discussing the, my involvement with the business and the amount of money that I had made, that he had reassessed his fee and was now wanting 500,000 up front.
 
 
 6
 Q. What was [his] advice to you?
 
 
 7
 A. He told me that for money like that I could hire Edward Bennett Williams and that I should consider someone else; or, if I was gonna stay with Dowd that I should consider a pay-as-you-go basis and just get a monthly invoice for services rendered.
 
 
 8
 And that I asked him if he would check into John Dowd and see if he was competent and reputable.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 Q. And did he report to you that Mr. Dowd was, in fact, reputable and competent?
 
 
 12
 A. He did.
 
 
 13
 Joint Appendix (J.A.) at 1042-43.
 
 
 14
 Reckmeyer decided to retain Dowd as his attorney, though he made clear that any additional payments would come from the profits of his illegal operations.[3] Dowd nevertheless continued to demand the large fee payments and threatened to withdraw from the representation if Reckmeyer did not make the demanded payments. Reckmeyer suggested and then implemented a scheme in which he paid Dowd with cashier's checks purchased in a false name. This plan continued after Dowd switched law firms, but Reckmeyer became concerned when the records from Dowd's former firm were subpoenaed. Dowd suggested cash payments, but that plan was quickly discarded and the use of cashier's checks with false names resumed. Reckmeyer kept the amount of each check below $10,000, ostensibly to avoid federal reporting requirements. Id. at 1409.[4]
 
 
 15
 Much of Reckmeyer's illegal income was in banks in the Bahamas and he so informed Dowd. Dowd, fearing that Reckmeyer would be indicted and prohibited from transferring money out of the Bahamas, continued to press for payments with full knowledge that the funds would have to be smuggled into the country. Reckmeyer also knew that because the money was from illegal operations, it could not be disclosed upon entry into this country. Id. at 1061.[5] Reckmeyer arranged to have one of his brothers-in-law smuggle funds from banks in the Bahamas into the United States. After several successful smuggling trips, Reckmeyer's brother-in-law was arrested carrying illegal funds into this country. Reckmeyer then made two trips to the Bahamas and with Dowd's knowledge and approval withdrew funds from his Bahamian bank accounts, smuggled the funds back into this country without filing the required federal reports, and used the funds to pay Dowd.
 
 
 16
 Reckmeyer was indicted along with twenty-four other named co-conspirators in January 1985. He was charged in twenty-four of the forty-eight counts of the indictment with a variety of narcotics, weapons, and tax offenses. Among the charges, Reckmeyer was named in the lead drug conspiracy count under 18 U.S.C. Sec. 846, and was accused of engaging in a continuing criminal enterprise (CCE) under 18 U.S.C. Sec. 848. One of the overt acts identified in the indictment as part of the drug conspiracy was the interdicted effort of Reckmeyer's brother-in-law to smuggle funds from the Bahamas into the United States. According to Reckmeyer, both he and Dowd were aware that the only use for the funds was to pay Dowd.
 
 
 17
 Reckmeyer was arrested and detained pursuant to government motions after the grand jury returned its indictment. The district court also entered a restraining order freezing Reckmeyer's assets, which were subject to forfeiture, thus prohibiting payment to Dowd. At that point, Dowd told Reckmeyer that he would no longer represent him since he could not be paid. Two days later, Reckmeyer pleaded with Dowd to stay on the case, though, as he later testified to the Dowd grand jury, he felt betrayed at that time by Dowd. Dowd told Reckmeyer that he had devised a way to circumvent the restraining order and that he would continue the representation if Reckmeyer could pay an additional $200,000. By this time, Reckmeyer alleges that he had already paid Dowd approximately $500,000, but he wanted to retain Dowd and agreed to follow Dowd's plan to pay more fees. Reckmeyer admitted that he paid Dowd approximately $40,000 in violation of the district court's restraining order.
 
 
 18
 The evidence against Reckmeyer was substantial, and Dowd advised him to plead guilty. Dowd negotiated a plea agreement with the government that required Reckmeyer to plead guilty to four counts, including the CCE charge, and called for a twenty-year sentencing cap.[6] Dowd allegedly told Reckmeyer that the government agreed to recommend the minimum possible sentence in exchange for Reckmeyer's full cooperation in disclosing and forfeiting the assets gained through illegal operations.[7] Reckmeyer also alleged that Dowd negotiated a "side-deal" outside the plea agreement that required the government to provide a monthly stipend for Reckmeyer's wife's living expenses. Reckmeyer accepted the plea agreement and appeared before the district court in March 1985 for a Rule 11 plea hearing. The government presented its case against Reckmeyer, and he agreed under oath that the government could have proved its case against him.[8] Reckmeyer confirmed that he was freely and voluntarily pleading guilty and that the plea agreement represented the entire agreement with the government. The court also asked whether he was satisfied with Dowd's representation, and Reckmeyer answered, "Very much so, Your Honor." J.A. at 219. The court accepted Reckmeyer's plea; he was sentenced to seventeen years imprisonment on the CCE charge, with concurrent sentences of two years for unlawful currency transportation, two years for unlawful possession of a firearm, and three years for filing false tax returns.
 
 
 19
 Soon after he was sentenced, Reckmeyer contacted new counsel, who advised him that Dowd had a conflict of interest and that the conflict could have affected Dowd's representation. On advice of counsel, Reckmeyer contacted the government's chief prosecutor and reported Dowd's alleged misdeeds. At least two grand juries investigated Dowd's representation of Reckmeyer, but no criminal charges were brought as a result of the investigations.[9]
 
 
 20
 In June 1988, Reckmeyer filed a 28 U.S.C. Sec. 2255 petition to vacate sentence alleging that Dowd's conflict of interest had deprived him of his constitutional right to counsel. He had earlier that year unsuccessfully sought disclosure of grand jury materials from the investigation of Dowd, but the district court in August 1988 ordered the government to provide Reckmeyer with the requested grand jury materials and he appended the grand jury testimony to his petition. The government responded to the petition and argued for dismissal on three substantive grounds: that Reckmeyer waived any ineffective assistance claim he might have by knowing participation in Dowd's alleged misdeeds, that no actual conflict of interest existed because Dowd's stake in the case was the same as Reckmeyer's and could best be served by working for Reckmeyer's acquittal, and that Reckmeyer was not prejudiced by any conflict that might have existed because he could not show that Dowd's representation was adversely affected. At a hearing on the petition, the district court questioned whether the government was challenging the factual basis of the petition or merely challenging its sufficiency to state a claim for relief. At the court's suggestion, the government refiled a motion to dismiss, alleging the same substantive grounds, pursuant to Rule 12 of the Rules Governing Section 2255 Proceedings in the United States District Courts, see 28 U.S.C. foll. Sec. 2255, and Fed.R.Civ.P. 12(b)(6).
 
 
 21
 The district court granted the government's motion to dismiss. The court stated that the motion to dismiss was properly before it and that the motion was "manifestly appropriate as a means of testing the legal sufficiency of [Reckmeyer's] petition." 709 F.Supp. at 682. No evidentiary hearing was necessary to determine the legal sufficiency of Reckmeyer's allegations. In this procedural posture, the court accepted Reckmeyer's allegations as true and looked solely to the question whether the allegations stated a claim for constitutional relief.
 
 
 22
 The court ruled that an actual conflict of interest was alleged in that Dowd had entangled himself in the conduct charged against Reckmeyer to the point that Dowd "would choose a course of action to suit his own interests in avoiding criminal liability over a course of action most favorable to his client." Id. at 688 (citation omitted). Moreover, the petition sufficiently alleged an adverse impact on Dowd's representation in that he pressured Reckmeyer to plead guilty and effectively foreclose possible inquiry into Dowd's own criminal conduct. Id. at 689-90. The court held, however, that Reckmeyer had waived his right to conflict-free counsel. Reckmeyer, and Dowd, knew that the fee payments were illegal and understood that they were violating federal currency laws. Further, Reckmeyer had become enough concerned early in Dowd's representation to inquire into his competence, reputation, and fee demands; having hired Dowd he could have fired him, especially after Dowd told him that he would no longer represent him without the ability to be paid. Finally, the court emphasized that Reckmeyer indicated under oath at the plea hearing that he was satisfied with Dowd's representation. Id. at 691-94. The court found persuasive the reasoning on similar facts in Bridges v. United States, 794 F.2d 1189 (7th Cir.1986).
 
 
 23
 This appeal followed. Reckmeyer's principal contention here is that an evidentiary hearing was required to determine whether he knowingly waived the right to conflict-free representation.
 
 II
 
 24
 In conducting Sec. 2255 proceedings, district courts have discretion to apply the Federal Rules of Civil Procedure in appropriate circumstances.
 
 
 25
 If no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules, or any applicable statute, and may apply the ... Federal Rules of Civil Procedure [if] appropriate, to motions filed under these rules.
 
 
 26
 28 U.S.C. foll. Sec. 2255 (Rule 12, Rules Governing Section 2255 Proceedings); see also United States v. Frady, 456 U.S. 152, 166-68 n. 15 (1982) (discussing discretionary use of federal civil and criminal procedural rules in Sec. 2255 proceeding). Here the district court entertained the government's Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. We agree that a district court may properly consider a Rule 12(b)(6) challenge to the legal sufficiency of a Sec. 2255 petition.[10] Cf. Bond v. Procunier, 780 F.2d 461 (4th Cir.1986) (dismissal of state prisoner's Sec. 2254 petition for failure to state a claim under Fed.R.Civ.P. 12(b)(6) affirmed).
 
 
 27
 Under familiar principles, on such a challenge the petition must be construed in the light most favorable to the petitioner, with its allegations taken as true, Wright & Miller, Sec. 1357, at 594; see Battlefield Builders, Inc. v. Swango, 743 F.2d 1060, 1061-62 (4th Cir.1984), and with all reasonable inferences drawn in favor of the petitioner. See Goldfarb v. Supreme Court of Virginia, 766 F.2d 859, 860 n. 1 (4th Cir.1985). Our review of the district court's legal ruling is de novo. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989).
 
 
 28
 The following substantive principles control our review. A conflict of interest that prejudicially affects counsel's representation of a client may violate the client's sixth amendment right to effective assistance of counsel; criminal defendants are entitled to the undivided loyalty of competent counsel. See Strickland v. Washington, 466 U.S. 668, 688 (1984); see also Cuyler v. Sullivan, 446 U.S. 335, 346 (1980). Prejudice under these circumstances is presumed only if " 'an actual conflict of interest adversely affected [the] lawyer's performance.' " Strickland, 466 U.S. at 692 (quoting Cuyler, 446 U.S. at 348). In the guilty plea context, see Hill v. Lockhart, 474 U.S. 52, 58-59 (1985), a constitutional violation occurs if there is an actual conflict of interest that adversely affects the voluntariness of the guilty plea. See Thomas v. Foltz, 818 F.2d 476, 480 (6th Cir.1987).
 
 
 29
 A criminal defendant may, however, waive the right to conflict-free representation, just as he may waive the right to any counsel. See Bridges, 794 F.2d at 1193; United States v. Garcia, 517 F.2d 272, 276 (5th Cir.1975); see also Cuyler, 446 U.S. at 347 (attorney and client may "knowingly accept such risk of conflict as may exist"). Such a waiver, like the waiver of any constitutional right, must be "voluntarily, knowingly, and intelligently [made] with sufficient awareness of the relevant circumstances and likely consequences." Bridges, 794 F.2d at 1193. While the waiver of constitutional rights is never presumed, see, e.g., Marzullo v. Maryland, 561 F.2d 540, 546 (4th Cir.1977), waiver may be found despite the lack of specific knowledge of all the implications of the waiver, see Bridges, 794 F.2d at 1194 (citing United States ex rel. Tonaldi v. Elrod, 716 F.2d 431, 438 (7th Cir.1983)). The question of waiver is one of law for the court. See Brewer v. Williams, 430 U.S. 387, 397 n. 4 (1977).
 
 
 30
 The district court ruled that on the facts as pleaded a conflict of interest existed between Reckmeyer and his attorney Dowd and that the conflict adversely affected Dowd's representation of his client. Reckmeyer alleged with specificity Dowd's knowing complicity in the payment of attorney's fees with funds generated from illegal operations, the illegal smuggling of currency into this country, and the direct violation of a court order freezing Reckmeyer's assets and preventing payment of any additional fees to Dowd. Dowd allegedly also had independent personal knowledge that the currency smuggling attempt by Reckmeyer's brother-in-law in fact related not to the central conspiracy charged to his client but rather to the conspiracy to smuggle funds into this country to pay his fee. The money smuggled into the country was itself conceivably evidence of the substantial proceeds element of the CCE charge. See 21 U.S.C. Sec. 848(c)(2)(B).
 
 
 31
 Reckmeyer then argues that the conflict manifested itself to his actual prejudice in Dowd's seeking, to the detriment of Reckmeyer, to minimize the risk of exposing his own misdeeds. Reckmeyer alleged that at the detention hearing Dowd failed to pursue aggressively on cross-examination the circumstances of the arrest of Reckmeyer's brother-in-law. More significantly, he alleged that Dowd strongly advocated that Reckmeyer accept the plea bargain he had negotiated with the government and waive any right to appeal. According to Reckmeyer, Dowd discussed no other options once the motion to dismiss the indictment was denied by the district court. He encouraged Reckmeyer by allegedly securing verbal commitments from the government to recommend the minimum sentence and to pay a monthly stipend to Reckmeyer's wife for living expenses. And he pressured Reckmeyer to accept the plea bargain by demanding an additional $200,000 in fees to take the case to trial.
 
 
 32
 In the procedural posture of this case we must accept these allegations as true, though many are hotly disputed. But even assuming that the facts alleged demonstrate a conflict of interest between Reckmeyer and Dowd that adversely affected Dowd's performance, see, e.g., Thomas v. Foltz, 818 F.2d at 482; Government of the Virgin Islands v. Zepp, 748 F.2d 125, 135-36 (3d Cir.1984), we agree with the district court that the facts alleged also demonstrate as a matter of law a knowing waiver of the right to conflict-free representation. Reckmeyer has admitted full knowledge of Dowd's alleged misdeeds and there is no question he knew that some of their joint actions were illegal. Despite this knowledge, he chose to "rehire" Dowd even after the attorney dropped the representation upon learning that he could not legally be paid. And at the Rule 11 hearing, Reckmeyer affirmed under oath that he was "very much" satisfied with Dowd's representation.
 
 
 33
 These facts plainly show that Reckmeyer must have known that Dowd was self-interested and that his self-interest could run counter to Reckmeyer's. They also show that knowing all this, Reckmeyer nevertheless decided to retain Dowd as counsel. Though Dowd obviously never explained that his interests were in conflict with Reckmeyer's in a way that might affect his representation, the only reasonable inference that can be drawn in logic from the facts alleged is that Reckmeyer must have realized that Dowd's private interests would best be served by a quick and summary disposition that minimized any risk of inquiry into his own criminal culpability (if the facts be as alleged). We need infer to Reckmeyer no sophisticated understanding of the law or legal tactics nor any special prescience about human nature to hold that he had to know that Dowd's private interest would be best served by a plea bargain, whether or not that best served Reckmeyer's. Because Reckmeyer inevitably understood and accepted the conflict of his interests with those of Dowd he therefore knowingly and voluntarily waived his right to conflict-free representation. See Bridges, 794 F.2d at 1193-95 (waiver found where defendant aware of counsel's conflict of interest by virtue of his own complicity in conduct giving rise to conflict).
 
 III
 
 34
 We therefore agree with the district court that on the facts as pleaded Reckmeyer knowingly and voluntarily waived his right to conflict-free representation by Dowd. To hold otherwise on the undisputed facts of record here would be to condone the knowing complicity of defendants in conflict-creating misconduct of their co nsel while preserving as an anchor to windward the claim of a constitutional violation resulting from that misconduct. The constitution provides no such option in guaranteeing the right to the effective assistance of counsel.
 
 AFFIRMED
 
 
 [1]
 Reckmeyer appeals the district court's grant of the government's Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. In this posture, the district court accepted Reckmeyer's version of the facts alleged in his petition as true. See 709 F.Supp. 680, 681-82 (E.D.Va.1989)
 
 
 [2]
 The grand jury testimony was submitted with Reckmeyer's Sec. 2255 petition and was considered by the district court in ruling on the government's motion to dismiss. See 709 F.Supp. at 691 n. 13; see also 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1357, at 593 (1969) [hereinafter Wright & Miller] (court may properly consider exhibits attached to complaint in determining whether to grant Rule 12(b)(6) motion). Reckmeyer gave testimony before a grand jury investigating possible criminal conduct by John Dowd
 
 
 [3]
 The financial transactions in this case predate the Money Laundering Control Act of 1986. See 18 U.S.C. Sec. 1956. The Act proscribes the laundering of monetary instruments, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity." id. Sec. 1956(a)(1)
 
 
 [4]
 See 31 U.S.C. Sec. 5313(a)
 
 
 [5]
 See generally 31 U.S.C. Secs. 5316, 5317 (currency importation reporting and forfeiture provisions)
 
 
 [6]
 Reckmeyer agreed to plead guilty to Count 2 of the indictment, engaging in a continuing criminal enterprise, see 18 U.S.C. Sec. 848; Count 14, receipt or possession of an unregistered firearm, see 26 U.S.C. Sec. 5861(d); Count 20, violating reporting requirements for the importation of money instruments, see 31 U.S.C. Sec. 5315; and Count 40, filing false tax returns, see 26 U.S.C. Sec. 7206
 
 
 [7]
 At the time, Reckmeyer faced a minimum ten year sentence on the CCE charge; then, as now, the maximum sentence on the CCE charge was life imprisonment. See 18 U.S.C. Sec. 848
 Pursuant to the plea agreement, the government debriefed Reckmeyer. The government accused Reckmeyer of failing to disclose all of his assets and, according to Reckmeyer, Dowd joined the government agents in chastising him for dissembling. Down allegedly did tell Reckmeyer to invoke attorney-client privilege when he was asked about attorney's fees he paid to Dowd.
 
 
 [8]
 The government's case against Reckmeyer is detailed in the opinion below. See 709 F.Supp. at 682-83
 
 
 [9]
 Reckmeyer also obtained new court-appointed counsel and successfully moved the district court, pursuant to Fed.R.Crim.P. 35, to reduce his sentence to fourteen years
 
 
 [10]
 The government attached several exhibits, including affidavits, to its initial response to Reckmeyer's petition. These exhibits were not considered by the district court in ruling on the government's Rule 12(b)(6) motion to dismiss. See Fed.R.Civ.P. 12(b) (if matters outside pleading are presented to and not excluded by court, Rule 12(b)(6) motion must be treated as motion for summary judgment and disposed of as provided in Fed.R.Civ.P. 56)