932 F.2d 964
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
CARL NEAL, Defendant-Appellant.
 No. 90-5068
 United States Court of Appeals,
Fourth Circuit
 Argued Feb. 8, 1991.
Decided May 15, 1991.
As Amended June 3, 1991 and June 21, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert N. Maletz, Senior District Judge. (CR-89-455-B)
 ARGUED: Charles Lamasa, Baltimore, Maryland, for Appellant.
 Ethan L. Bauman, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 ON BRIEF: Breckinridge L. Willcox, United States Attorney, Barbara S. Sale, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 Before RUSSELL and SPROUSE, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Carl Neal appeals from his conviction after jury trial and sentencing for bank robbery and related offenses, in violation of 18 U.S.C. Sec. 2113(a), (b), (d) and (g), and the use of a firearm, in violation of 18 U.S.C. Sec. 924(c). We affirm.
 
 
 2
 * In July 1989, four men participated in a robbery of the Second National Bank in Annapolis, Maryland. Evidence indicated that three men entered the bank and, after robbing it, fled two blocks to a "get-away" car, driven by Eric Fisher. One robber exited first, through the rear door of the bank; the other two left through the front door. These three men were variously identified as Carl Neal, his brother Maurice Neal, and Jay Johnson. Jay Johnson and Maurice Neal were indicted, tried and convicted. Carl Neal was later indicted, and it is that conviction we review.
 
 
 3
 Carl Neal raises several issues on appeal, but the heart of his complaint is grounded in the government's failure to provide certain exculpatory identification evidence. Following the robbery, pedestrian bystander, Thomas Roe, observed one man run past him, carrying what appeared to be a bank bag. Looking up, Roe noticed two other men fleeing. He anticipated their route, positioned himself to be near as they passed, and tripped one of them, causing the robber to fall to the ground. The robber regained his footing and continued to flee, slowing only to pull out a pistol and fire over his shoulder at Roe. Following from a safe distance, Roe observed the two men get into a station wagon taxi cab and drive off.
 
 
 4
 Some three hours later, another bystander, Gregory Coates, telephoned the Annapolis Police Department advising that he had information concerning the robbery. Coates, who was interviewed by FBI Agent Hanburger, reported that he had been near the bank at the time of the robbery and saw Jay Johnson, whom he knew, enter the bank. Shortly thereafter, while walking along the road the robbers used as an escape route, Coates stated that he observed three men running. He could not identify the first man who passed by, for he did not have the benefit of a clear look at him, but he identified the second two as Jay Johnson and Maurice Neal and added that Johnson had fired a pistol at a white man pursuing them.
 
 
 5
 At the trial of Jay Johnson and Maurice Neal, Coates first testified that the two men running together were Jay Johnson and Maurice Neal. Coates then changed his testimony, stating that he had seen Carl, not Maurice, Neal fleeing with Johnson. He explained that he knew both the Neal brothers and had simply confused their names. His testimony at the first trial, therefore, tended to exonerate Maurice but implicate Carl. Despite this confusion, Maurice Neal was convicted, along with Johnson.
 
 
 6
 Coates' testimony corroborated statements made by Eric Fisher, the get-away driver, who told police officials that the robber first leaving the bank had been Maurice Neal, and that the second two robbers were Jay Johnson and Carl Neal. At Carl Neal's trial, Fisher described preparation for the robbery and the detailed involvement of each of the participants, including Carl Neal, and of his subsequent conversation with Carl Neal when the latter complained concerning his share of the robbery proceeds. Officer Chandler Powell corroborated Fisher's testimony, testifying that Fisher had made the same statements just after the robbery.
 
 
 7
 Coates also testified at Carl Neal's trial, stating that he was certain it was Carl, not Maurice, Neal whom he saw running with Jay Johnson. Coates was thoroughly cross-examined on his contradictory testimony at the first trial and a complete transcript of that prior testimony was admitted into evidence.
 
 
 8
 Complicating the testimonial scenario even further, however, was the testimony of FBI Agent Hanburger. On crossexamination, Agent Hanburger revealed that, in his initial interview of Coates, he showed Coates a picture of Carl Neal and Coates denied seeing Carl at the robbery. That information had not been presented to the grand jury nor had it been revealed to defense counsel until Hanburger's cross-examination.
 
 
 9
 After his conviction, Carl Neal moved for a new trial, based on the late disclosure of Coates' non-identification evidence. The district court denied Carl Neal's motion and the defendant now appeals to this court.
 
 II
 
 10
 Carl Neal contends that the failure of the government to provide evidence of Coates' non-identification statement to Agent Hanburger violated the rule of Brady v. Maryland, 373 U.S. 83 (1963), and that the indictment itself may have been based on evidence improperly presented to the grand jury. Coates' nonidentification was, of course, exculpatory evidence relating to Carl Neal. However, it was discovered during the course of trial and in sufficient time for defense counsel to vigorously and effectively make use of it. See United States v. Browne, 829 F.2d 760, 765 (9th Cir. 1987), cert. denied, 485 U.S. 991 (1988); United States v. Boschetti, 794 F.2d 416, 418-19 (8th Cir.), cert. denied, 479 U.S. 889 (1986). More importantly, in our view, it does not rise to the level of "material"[1] evidence, for we do not believe that there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[2] Bond v. Procunier, 780 F.2d 461, 464 (4th Cir. 1986) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).
 
 
 11
 Likewise, we perceive no abuse of the grand jury system resulting from Agent Hanburger's failure to disclose the content of Coates' first interview to the grand jury. In a statement presented to the trial court on a motion for new trial, Agent Hanburger stated that he did not attach importance to the statement, did not include it in any reports and did not tell government counsel about it. Hanburger explained that Coates had insisted from the beginning that he had seen Maurice Neal with Johnson so that Coates' statement that he had not seen Carl Neal was not significant to him and he had simply forgotten it until asked about it on cross-examination.
 
 
 12
 Had the grand jury been presented with this evidence, it would, of course, have considered it in determining probable cause. However, the potential danger resulting from the grand jury not having this evidence during their deliberation is rendered harmless, since the petit jury heard that same evidence and found Carl Neal guilty beyond a reasonable doubt-an obviously higher standard of proof. See United States v. Mechanik, 475 U.S. 66, 70 (1986); United States v. Fountain, 840 F.2d 509, 514-15 (7th Cir.), cert. denied, 488 U.S. 982 (1988).
 
 
 13
 Additionally on appeal, Carl Neal contends that the prosecution improperly commented during closing argument on the defendant's failure to take the stand. In cross-examination of Eric Fisher, defense counsel vigorously attacked Fisher's credibility, emphasizing his "various" statements about the robbery and his participation in it. In rebuttal argument, the prosecutor argued that Fisher had no reason to fabricate the story he related to police two days after the robbery. The prosecutor further explained that if Fisher had remained silent, he probably never would have been convicted. In making that point, the prosecutor stated: "as you well know, a defendant has a right to remain silent. You have seen that right exercised in this courtroom." Carl Neal contends that the statement "you have seen that right exercised in this courtroom" violates his privilege against selfincrimination. It is clear, however, that this statement was not intended to mislead the jury or to suggest that Neal's silence evidenced his guilt. Rather, counsel was attempting, perhaps unartfully, to bolster Fisher's credibility. Placed in its proper context, the comment is not the type of reference to a defendant's silence that requires reversal of a conviction. See United States v. Robinson, 485 U.S. 25 (1988).
 
 
 14
 In sum, we perceive no error in these issues, nor in the district court's restriction of defense counsel's cross-examination of Fisher. Likewise, we find no error in the district court's refusal to allow a downward departure for Neal's belated admission of guilt at the sentencing hearing. United States v. Martinez, 901 F.2d 374, 378 (4th Cir. 1990).
 
 
 15
 In view of the above, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985)
 
 
 [2]
 The government prosecutor appears to have even conceded the weakness of Coates as a government witness, stating in closing argument that Coates was "laboring under a set of confusions which might be beyond me to even try to explain where they started or how they worked out."